Isidor Wasservogel, Spec. Ref.
This is an action for specific performance whereby plaintiff seeks to compel defendant to accept its deed and bill of sale for the purchase of a garage and service station and to pay plaintiff the balance of the purchase price set forth in the contract of sale.
Plaintiff’s second amended complaint is based upon an alleged anticipatory breach of such contract by defendant. This agreement, entered into after prolonged negotiations, contained a representation by the seller that the elevator on the premises “will be in good working order on the date of closing of title.” At the request of plaintiff’s attorney, defendant’s counsel agreed to an adjournment of the date for the closing of title from September 30 to October 31, 1960. Prior to such closing date, however, and in accordance with the terms of the contract of sale, the purchaser was permitted to take possession of the premises involved and operate the business.
It appears from the record that shortly after defendant’s assignor took possession of the garage (Sept. 1, 1960) until the commencement of this action, there was a continuous *517 dispute between the parties regarding the condition of the elevator. It is plaintiff’s contention that on October 11, 1960, during a conference called by counsel in an attempt to settle this dispute between the parties, the attorney representing the purchaser stated that 1 ‘ the deal was off. ’ ’ Thereafter, on or about October 13,1960, plaintiff instituted an action for specific performance.
Despite such lawsuit, defendant continued to occupy the premises, but, as the record indicates, failed to pay plaintiff any rent for such use and occupancy. In January, 1961, plaintiff brought a summary proceeding in the Municipal Court, Borough of Manhattan, for the removal of defendant from the premises, pursuant to subdivision 10 of section 1411 of the Civil Practice Act. After a trial, the Municipal Court granted a final order of dispossess in favor of plaintiff and against defendant. Upon appeal to the Appellate Term, First Department, this decision was subsequently affirmed. Thereafter, plaintiff moved in the Supreme Court, New York County, for an assessment of damages resulting from the failure of defendant to compensate it for the use and occupancy of the premises from September 1, 1960.
The record adduced upon the trial in the instant action clearly establishes that plaintiff, rather than defendant, breached the contract of sale which plaintiff seeks here to compel the defendant to perform. The proof shows that the doors on the elevator shaftway of the premises here involved did not operate or lock properly on the proposed date of closing title. It is plaintiff’s contention, however, that these doors and their proper operation do not come within its representation that the “ elevator ” will be in good working order. Plaintiff argues that the shaft-way and its doors are not part of the elevator within the meaning and intent of the contract provision in dispute. Such contention is specious.
The hazard to life and property by operating an elevator with missing or malfunctioning shaftway doors is obvious. Significantly, under the applicable provisions of the Administrative Code of the City of New York, an elevator, freight or passenger, may not be operated legally unless the shaftway or hoistway doors are properly installed and properly functioning. (See Administrative Code of City of New York, art. 14, § C26-771.0 et seq.) Moreover, it should be noted that an expert witness called by plaintiff, a New York City inspector of elevators who had placed violations on the elevator in question, stated on cross-examination that “ the shaft doors, the car, *518 the sides, the shoes ” are all part of the elevator. He further admitted that if the shaft doors do not work properly, then the elevator is not in “ good operating order.”
Giving due consideration to the foregoing, I hold that such shaftway doors are an integral part of the elevator and fall within the representation by plaintiff in the contract of sale which relates to the ‘1 good working order” of the elevator. If plaintiff intended such representation to pertain only to the load-carrying unit of the elevator, that is, to the car itself, the representation in the contract could have and should have so provided.
Upon the evidence before me, I find that the shaftway doors on the elevator here involved did not operate properly at any time since defendant occupied the premises. It appears from the testimony of plaintiff’s own principal officer that plaintiff was aware during its negotiations with defendant for the sale of the premises that the elevator was in need of repair. At no time, however, did he cause any repairs to be made with respect to removing the violations placed on the elevator shaftway doors by the New York City elevator inspector heretofore mentioned. The fact that such violations were subsequently caused to be removed by the same city inspector is most peculiar and was not satisfactorily explained to the court, particularly in view of the evidence which clearly establishes that little, if any, work was performed on the shaftway doors between the period of time when the violations were placed thereon and their later removal.
In view of the credible testimony and documentary evidence, I have reached the conclusion that there was no anticipatory breach of the contract of sale as set forth in plaintiff’s complaint. Plaintiff has failed to prove that defendant’s counsel categorically stated that “ the deal was off,” as alleged in the complaint. Moreover, as a matter of law, plaintiff must prove that such a positive statement was made without justification (Brakarsh v. Brown, 162 Misc. 412, 414). In the opinion of the court, even if defendant’s counsel had made the statement which plaintiff attributes to him in its complaint, the credible evidence clearly shows that there was justification therefor. The elevator was not in good working order, as represented by plaintiff, yet it refused to make the necessary repairs to the shaftway doors prior to tendering title. The sum of approximately $3,000 which it offered to defendant during their negotiations to have the repairs made was justifiably rejected as inadequate by defendant. The credible testimony and documentary evidence *519 establish that almost three times this amount would be needed in order to put the elevator in proper working condition.
Defendant’s counsel was within his rights in demanding that plaintiff deliver the elevator, including the shaftway doors, “ in good working order ” as a condition precedent to acceptance of title. Until plaintiff did so, the contract between the parties was still a bilateral agreement requiring* performance on the part of plaintiff as well as performance on the part of defendant. Thus, plaintiff’s failure to have the necessary repairs made and to deliver the elevator as represented by it must be deemed to be a good and justifiable cause for defendant’s refusal to accept title. In view of these circumstances, there was no cause for the institution of the instant action by plaintiff on October 13, 1960.
As above noted, plaintiff’s counsel had requested an adjournment for closing title from September 30 to October 31, 1960. Plaintiff, therefore, should have tendered title on October 31, 1960, in accordance with the agreement. The tender of title by plaintiff before or during the adjournment did not make it incumbent upon defendant to accept same or have its refusal treated as an anticipatory breach. Plaintiff’s argument here, if carried to.its ultimate conclusion, would result in a determination that the insistence by one party to a bilateral contract upon performance by the other party thereto, may be treated by such other party as an anticipatory breach. Such argument, on its face, is untenable.
It is plaintiff’s contention here that the prior determination of the Municipal Court in the summary proceeding and its affirmance in the Appellate Term are res judicata and binding on this court in the trial of the case at bar. In my opinion, such contention is without merit.
The proceeding in the Municipal Court to remove defendant from the premises here involved was brought under a 1956 amendment to section 1411 of the Civil Practice Act. This recently enacted amendment permits the recovery of real property 1 ‘ Where a vendee under a contract of sale, the performance of which is to be completed within ninety days after its execution, being in possession of all or a part thereof, and having defaulted in the performance of the terms of the contract of sale, remains in possession without permission of the vendor ” (subd. 10). It is apparent from this subdivision that the nature and quality of the proof adduced before the Municipal Court would be, and was, entirely different from that now in the record before this court. It was sufficient for the purposes of the *520 Municipal Court proceeding for the plaintiff vendor merely to show that the defendant vendee was in default in the performance of any one of the many terms of the contract of sale. Justification for such default, failure on the part of the vendor to perform the terms of the contract, proper tender of title and the proof required to establish an “ anticipatory breach,” as pleaded in the complaint here, were matters that this section did not bring before the lower court. Thus, although the Municipal Court acquired equity jurisdiction to the extent afforded by the cited legislative enactment {supra), it does not follow that its determination is binding on this court or that in reaching its decision, it had considered the issues and defenses raised by the pleadings and proof in the instant action.
As a matter of fact, it is to be noted that Mr. Justice Sabatino, who presided at the Municipal Court proceeding, anticipated plaintiff’s argument and was aware of the distinction of the issues then before him and those which might have to be determined here. The trial minutes of the Municipal Court proceeding contain the following statement by the court: “I agree with you it will be possible that the issues themselves will have to be decided in' the Supreme Court. In effect, in continuing the action, we may have an incongruous situation; that is, you may have one decision by this court, and you may have another one in that court. But that does not mean that the proof, merely the proof, the quality of the proof, will be the same in both courts. You have only to conform to this court. I do not care about the Supreme Court.”
Likewise, contrary to plaintiff’s contention, there is nothing inconsistent with a determination in defendant’s favor in this action and the fact that a Supreme Court Justice has permitted plaintiff to assess damages for the period of time defendant occupied the premises. Defendant concededly failed to pay rent during such period and regardless of the merits of the instant action, plaintiff may nevertheless be entitled to some compensation by defendant for its use and occupancy of the property involved.
Judgment is rendered accordingly in favor of defendant dismissing the complaint upon the merits, with costs.